IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DR. SABRINA NORMAN,<br>*Plaintiff* | § § § § | |
| v. | § § § | CA 4:19-cv-00355<br>Chief Judge Lee H. Rosenthal |
| FUSION ACADEMY,<br>*Defendant* | § § § | JURY TRIAL DEMANDED |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff Dr. Sabrina Norman ("Plaintiff" or "Norman") complaining of Fusion Academy ("FA"), and for cause would show the following:

### PARTIES

1. Plaintiff is a fully certified professional educator in Texas and resides in Harris County, Texas.

2. FA is a private corporation which engages in the business of selling education to minors who have learning disabilities or behavioral problems, and has a principal place of business at 1201 Lake Woodlands Drive, Suite 4000, The Woodlands, Texas 77380; FA has been served, answered, and removed this action to federal court.

## JURISDICTION

1. Plaintiff filed her Charge of Discrimination, 460-2018-02316, and received her EEOC Right to Sue, then requested a Right to Sue by the Texas Workforce Commission-Civil Rights Division ("State"). Upon receipt of her State Right to Sue, she timely filed her suit within 180 days of the receipt of that right to Sue, and within 24 months of the last discriminatory employment practice.

## FACTS

2. Plaintiff is a Black Female and has earned Bachelor's, Master's, and Doctorate degrees, and is certified by the Texas Education Agency as a Professional Educator in Special Education Counseling, Counseling and Guidance, Mid-Management, Spanish, Biology, and Life and Earth Sciences. Plaintiff with more than 30 years experience in education.

3. Plaintiff is committed to the concept of maximizing teacher exposure to students, and the ideal of one to one teacher/pupil ratio.

4. FA espouses and charges tuition based on teaching one to one teacher/pupil ratio.

5. In July 2016, Plaintiff applied for and secured employment with FA.

6. Plaintiff learned from FA that she was the most experienced and qualified educator to work with FA in its Woodland facility; Plaintiff was informed that she was the only educator at the FA Woodlands facility with a doctorate in education, certification and experience with special needs children.

7. Plaintiff was told that she could teach and self- regulate her hours so that she would be able to teach as much as she wanted, and thereby control her income as she planned.

8. Plaintiff was initially interviewed by Raquel Prada (Hispanic), Assistant Director of FA, lesser qualified than Plaintiff.

9. Plaintiff then assigned to do MOCK TEACHING with Rachel Harper ("Harper") (White), lesser qualified than Plaintiff.

10. Then Plaintiff was interviewed by Joseph Thompson (White), Director of FA, lesser qualified than Plaintiff.

11. Thompson offered Plaintiff employment at $27.00 per hour, and Plaintiff was assigned to teach 10 different lesson preparations; Plaintiff was the only educator assigned to 10 different preparations.

12. FA announced early in the 2016-2017 school year that there was an opening for a position which paid more than $27.00 per hour.

13. Rachel Harper had been appointed as Lead Teacher of English and History; when Plaintiff pointed out to Raquel Prada that Harper was less qualified

than Plaintiff in that Harper was uncertified and had no formal training-in-the- classroom experience. Harper, became hostile toward Plaintiff after Plaintiff had competed unsuccessfully against Harper for the Lead Teacher Position.

14. Plaintiff applied for the Lead English Teacher position, but was denied and was given to the less qualified Rachel Harper.

15. FA selected Rachel Harper (White) who was less qualified than Plaintiff.

16. FA teacher Dana Sue Crews (White) a 14 year old male student with a female teacher "Jackie" in FA's Homework Café under a blanket on a bean bag.

17. Other FA teachers and staff commented that they had observed the same student and Jackie alone in Jackie's classroom.

18. Rumors started circulating that the same male student was sexting his classmates.

19. Plaintiff and a fellow teacher, "Brandon" also noticed that the same 14 year old student retreat at the end of the school day into the windowless classroom of another teacher "Connie", where the two stayed even after Plaintiff and Brandon left FA for the day, after work.

20. Plaintiff observed the male student come to school apparently under the influence of marijuana with the smell of the drug about his person.

21. Plaintiff reported her observations to Joseph Thompson, as did Brandon, Dana Sue and Barbara Keith.

22. When Plaintiff asked Thompson asked if she should contact the student's parents, Thompson said "no, [he] would do that, and [Plaintiff] should not say anything about what she had seen."

23. Thompson fired both teachers, "Jackie" and "Connie", and reportedly fired Brandon as well for comments he had made to Thompson.

24. Because of the student having inappropriate relationships with Jackie, FA's Brad Astin, who had been the original Director came to the Woodlands school and met with the faculty and management, and scolded the faculty because they had not stepped up to the plate and said something to Joseph about what was being seen…about Jackie being with the student under the blanket, in Homework Café, alone in the classroom.

25. What happened with that was, Plaintiff responded that she had spoken out, but followed leadership and did as they had been with the knowledge that FA leadership-Thompson-knew what was going on.

26. That's when Rachel started giving Plaintiff very bad assessments on her charting/File Assessments.

27. Jordan Nail (White) was hired by FA.

28. As the Fall semester ended and the Spring semester started, Barbara Keith, Jordan Nail, Dana Sue Crews, and Plaintiff noticed that teaching assessments or "File Reviews" performed on each of them by Rachel Harper were skewed against the teachers and clearly unfair.

29. Plaintiff complained to Joseph Thompson several times and nothing was done.

30. Raquel who was the Assistant Director just stopped talking to Plaintiff all together. She never spoke to Plaintiff, she never had anything to say at all.

31. On or about March/April 2017, Plaintiff, Barbara Keith, Dana Sue Crews, and Jordan Nail met with Thompson to register their concerns about the unfair assessments of their teaching as performed by Rachel Harper.

32. During the meeting, Plaintiff commented on her perception that she was being discriminated against by Rachel Harper and her immediate superior, Prada.

33. Dana Sue stated that she thought Plaintiff had been targeted with discrimination because she had not been chosen teacher of the year when she was clearly more qualified for the title; Barbara interjected that Prada would not even talk to Plaintiff or even look at her and was clearly discriminating against Plaintiff because of her race and age.

34. Plaintiff added her own facts which she believed supported the claim that Prada and Rachel were discriminating against her as opposed to the way lesser qualified (White) teachers were treated by Prada and Rachel.

35. Thompson said he didn't respect public school teachers and told Plaintiff to "suck it up".

36. Director of FA, Joseph Thompson, also uncertified as a Professional Educator and with experience limited to FA, retaliated against Plaintiff for opposing the discriminatory denial of promotion to the position of Lead Teacher by filing a written disciplinary complaint against Plaintiff falsely accusing her of withholding "compelling information" about a student.

37. The meeting adjourned; Dana Sue Crews resigned.

38. Jordan Nails was promoted to a position which even she commented that she thought she was disqualified to hold.

39. Barbara Keith and Plaintiff both had their hours cut substantially by Thompson, and Plaintiff began to lose substantial monies, clearly in retaliation for having challenged Rachel's and Raquel Prada's discriminatory intent toward Plaintiff.

40. Plaintiff was forced to find a second job as an adjunct teacher at Lone Star College to make ends meet for the 2017-2018 school year.

41. Prada was terminated by Thompson in August 2017 for having revealed to Dana Sue that she knew Connie's room had been the "Sex Room" or revealing that as the classroom's name in the school, where Jackie had engaged in sex with the male student.

42. Prada had been revealed as having had knowledge of teacher Jackie's illegal activities by Dana Sue, who had resigned in April 2017 after the meeting with Thompson.

43. Dana Sue had sent letters to Thompson, Astin, and FA's CEO Peter Ruppert, which letters stated that Prada had been aware of the illegal activities between the male student and Jackie.

44. Plaintiff was the only faculty member with Secondary Certification, a Ed,D. (doctorate in education), certification in Special Education Counseling, and the only surviving Black teacher at FA, for the time period between her hiring in 2017 and the end of the Fall semester of the 2017-2018 school year.

    a. When Plaintiff was hired in the summer of 2016, FA had also hired two Black male teachers, Brandon, and Bryan.

    b. In the Fall of 2016, Brandon was fired after having witnessed Jackie and the male student in Connie's room after school hours.

   c. Bryan resigned because he was questioned the lack of Black personnel in leadership roles, but the story was circulated that he had been late for work when he had been in hospice with his seriously ill wife.

   d. Rumors circulated that a previous Black employee, Yolanda Anderson (who was charged with opening and closing the school) had been forced to resign earlier in 2016, when FA refused to promote her.

45. Plaintiff was not marketed as were the White teachers, in that the White teachers who were less qualified -but White- had their "BIO's" and photographs posted outside their classroom doors for Parents to inspect and use as basis for teacher-choice positions for their respective children.

46. That right of the parents to select teachers for their children was important because if a teacher was not selected by a parent to teach their child, then a teacher was dependent on FA to discretionarily assign a student and make the teacher's class.

47. Plaintiff started being denied students, and placed under pressure to quit, but she didn't; Plaintiff was denied classes by FA throughout the 2017-2018 school year and complained to Joseph Thompson that she was being treated unfairly.

48. Plaintiff learned from a parent that FA was recruiting students through psychologists and psychiatrists, by providing favors to the referring

healthcare professionals, and then being directed by FA as to which teachers they should select, and that FA's administrators were directing parents not to choose Plaintiff, claiming that her classes would not make or be available.

49. Then, Plaintiff received an email from Director Joseph Thompson, dated December 14, 2017, containing two (2) harassing pictures: the first photo was a monkey flipping the finger; and the second was a picture of two (2) black bears having sex. Both were considered by Plaintiff to be racial memes.

50. Plaintiff immediately forwarded the photos with a formal complaint to FA's corporate headquarters.

51. Thompson was not disciplined and Plaintiff was placed on a pre-termination disciplinary performance plan.

52. Plaintiff was denied full time employment with FA because of her race and because she opposed illegal discriminatory practices.

53. The illegal discriminatory practices to which Plaintiff has been subjected has proximately caused her to suffer damages, economic and non-economic.

54. Plaintiff filed Charge of Discrimination No. 480201802316 with the EEOC and a verified charge of Discrimination with the TWC CD, for discriminatory acts commencing on or about July 29, 2016 and continuing through February 14, 2018.

55. Plaintiff received her Right to Sue from the TWC CD on August 16, 2018, and then filed her suit in the District Court of Montgomery County on August 16, 2018.

56. Plaintiff filed her Charge of Discrimination within 180 days of the last discriminatory act directed against her, and within two years of when discriminatory acts occurred against her.

## PRAYER

Plaintiff prays that upon trial hereof before a jury of her peers, whereupon , she be awarded judgment for damages, economic and non-economic, and reasonable and necessary attorney's fees and costs of court.

Respectfully submitted,
*/s/ Larry Watts*_____
Watts & Company Lawyers, LTD
Larry Watts SBN 20981000
FED Id 7092
*Counsel for Plaintiff, Dr. Sabrina Norman*

## CERTIFICATE OF SERVICE

I, Larry Watts, certify that a true and correct copy of this document has been served on opposing counsel on this the 15th of April, 2019 by e filing with the Clerk of this court.

*/s/ Larry Watts*_____

12